IN RE DISQUALIFICATION OF SHEWARD.

LASALLE INSTITUTIONAL REALTY ADVISORS, L.L.C. ET AL. *v.* NANTUCKET ON

MONTGOMERY ROAD, LTD. ET AL.

[Cite as *In re Disqualification of Sheward,* 134 Ohio St.3d 1226,

2012-Ohio-6289.]

*Affidavit of disqualification—R.C. 2701.03—Alleged improper ex parte communications—Conversation between judge and opposing counsel involved substantive matters relating to underlying case—Judge ordered disqualified.*

(No. 11-AP-132—Decided January 19, 2012.)

ON AFFIDAVIT OF DISQUALIFICATION in Franklin County Court of Common Pleas,

Case No. 11-CV-002074.

_____

**O'CONNOR, C.J.**

{¶ 1} Brian D. Spitz, counsel for plaintiffs, has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Richard S. Sheward from acting on any further proceedings in case No. 11-CV-002074, now pending in the Court of Common Pleas of Franklin County.

{¶ 2} Attorney Spitz alleges that Judge Sheward has engaged in an improper ex parte communication with opposing counsel. Spitz states that as a result, his clients no longer trust Judge Sheward to impartially adjudicate their case. Spitz does not question the veracity or character of Judge Sheward, but he nevertheless believes that the judge should be disqualified to avoid the appearance of impropriety.

{¶ 3} Judge Sheward has responded in writing to the concerns raised in the affidavit of disqualification. The judge concedes that he did talk with

defendants' counsel ex parte, but he avers that no discussion about the merits of the case occurred during that conversation. According to Judge Sheward, Spitz overheard only part of the conversation with defense counsel and has taken those parts out of context.

{¶ 4} Careful review of the evidence leads to the conclusion that attorney Spitz has met his burden of demonstrating that Judge Sheward engaged in an improper ex parte communication with defendants' counsel. Accordingly, it is ordered that Judge Sheward be disqualified from further proceedings in the underlying case.

**Relevant Facts**

{¶ 5} On November 2, 2011, Judge Sheward conducted a pretrial conference in the underlying case. Defense counsel Marion H. Little Jr. had filed a motion for protective order and a motion to stay all discovery, and Judge Sheward scheduled the conference in an attempt to resolve the ongoing discovery disputes between the parties. Spitz and his co-counsel, Fred Bean, participated in the conference via the Bluetooth speaker phone in Spitz's car. Ray C. Freudiger, counsel for another plaintiff, also participated in the conference by telephone. Little was the only attorney who was present with Judge Sheward in the judge's office. At the end of the conference, Judge Sheward denied Little's request to cut off discovery and granted Spitz an extension of time to respond to defendants' summary-judgment motions.

{¶ 6} Immediately after the conference had ended, Spitz took a telephone call on the same line from another client that lasted seven to eight minutes. When Spitz ended this phone call, he and co-counsel Bean heard voices on the line and realized that Spitz's phone had not disconnected from Judge Sheward's phone at the end of the conference. As a result, both Spitz and Bean were able to overhear Judge Sheward and attorney Little having an ex parte conversation. At some point, Spitz interjected and informed Judge Sheward and Little that he had

rejoined the conversation and had overheard their discussion. There is no dispute that at least part of the conversation was overheard by attorneys Spitz and Bean. There is a dispute, however, about what Judge Sheward and attorney Little actually discussed.

{¶ 7} Spitz and Bean allege that Judge Sheward and Little discussed the merits of the case and what had transpired during the just-completed conference. Specifically, they claim that they overheard (1) the judge and Little discussing Little's previously raised motion for sanctions, (2) Little's comment that plaintiffs' proposed depositions would be worthless and that the taking of such depositions would be frivolous conduct by plaintiffs' counsel, (3) Judge Sheward's response that he agreed with Little that the depositions would be worthless and would not affect his decision on any outstanding motions, and (4) Judge Sheward's remark that "even though I don't like them, I have to let them do discovery until the discovery cutoff," because he did not want to create an appellate issue for plaintiffs.

{¶ 8} Judge Sheward does not respond specifically to each of these allegations. Rather, he responds generally, stating that "all of the discussions that occurred on November 2, 2011, had to do with discovery disputes between the parties, [and] nothing was ever mentioned about the merits of the case." (Underlining sic.) According to Judge Sheward, Spitz "overheard part of a conversation and has taken those parts out of context." The judge maintains that he and Little exchanged only "joking jabs" and that "good natured ribbing coupled with some complaining about court docket management comprised [their] banter." And Judge Sheward states that he "tried to set the record straight" once he realized that Spitz had overheard and was offended by the conversation.

{¶ 9} Attorney Little admits that he did "kibitz" with Judge Sheward as he was preparing to leave after the conference had ended. But Little denies engaging in any improper conversation with the judge. Rather, Little states that

he and the judge exchanged "tongue-in-cheek" comments about Little's work and vacation schedules. In addition, Little avers that he and the judge engaged in an "academic" discussion about how other common pleas court judges handle their dockets and about the court of appeals.

{¶ 10} Judge Sheward's staff attorney, Amy B. Koorn, has also submitted a response on behalf of the judge. Koorn was present during both the November 2 conference and the ex parte conversation between Judge Sheward and Little that followed. Koorn states that Judge Sheward and Little engaged in "light conversation" and "superfluous small talk," as Little gathered his case file at the conclusion of the conference, but that neither Judge Sheward nor Little spoke about the merits of the underlying case. Rather, according to Koorn, "Little spoke generally of his recent experience in moving for summary judgment in Common Pleas Court" and made "collective observations based upon his motion practice experience." Koorn notes that Little explained that "he typically tries to file his motions well in advance of the motion deadline with the hope of avoiding the sort of situation that had prompted the [November 2] conference." According to Koorn, Little described a "client centered approach that consists of moving for judgment early in an effort to end the litigation sooner and save his clients unnecessary expense." In response to Little's remarks, according to Koorn, Judge Sheward (1) acknowledged Little's "noble attempts," (2) noted that trial judges have wide discretion in discovery matters, and (3) commented that the court of appeals judges "frown upon decisions that shorten the discovery period."

### Analysis

{¶ 11} There is no dispute that Judge Sheward engaged in an ex parte conversation with attorney Little following the November 2 conference. The only question is whether the ex parte communication was improper and would therefore compel the judge's disqualification from the underlying case.

{¶ 12} Jud.Cond.R. 2.9 directs that judges "shall not initiate, receive, permit, or consider *ex parte* communications." In affidavit-of-disqualification proceedings, however, the question is not whether the judge has violated the Code of Judicial Conduct, but whether the ex parte communication demonstrates bias or prejudice on the part of the judge. *See In re Disqualification of Saffold*, 94 Ohio St.3d 1238, 1239, 763 N.E.2d 605 (2001). To satisfy this test, the communication must address a substantive matter in the case. *See In re Disqualification of Williams*, 74 Ohio St.3d 1248, 1249-1250, 657 N.E.2d 1352 (1993), and *In re Disqualification of Aurelius*, 77 Ohio St.3d 1254, 674 N.E.2d 362 (1996).

{¶ 13} Defendants' motions for summary judgment and their motion to sanction plaintiffs for filing a frivolous complaint were still pending before the trial court following the November 2 conference. At the end of that conference, Judge Sheward granted Spitz an extension of time to respond to defendants' summary-judgment motions and denied Little's request to cut off discovery. Little stated during the November 2 conference that he intended to file a second motion for sanctions to recover fees and costs associated with further discovery conducted by plaintiffs. In addition, the parties continue to be involved in several ongoing discovery disputes, as evidenced by Little's motion for protective order, filed on November 9, 2011.

{¶ 14} Attorney Spitz contends that the ex parte conversation included discussions about the merits of the case and what had transpired during the November 2 conference. Specifically, Spitz claims that he overheard Judge Sheward and Little discuss the following topics: (1) Little's previously raised motion for sanctions, (2) plaintiffs' proposed depositions, including remarks by Little that the taking of those depositions would be "worthless" and "frivolous," and (3) the judge's decision to allow plaintiffs to take depositions, including the judge's explanation that he did not want to create an issue for appeal by cutting off discovery.

**{¶ 15}** For his part, Judge Sheward concedes that after he ruled in favor of the plaintiffs at the November 2 conference, attorney Little "continue[d] to argue that all discovery should end." According to the judge, he stated to Little in response that "there was no reason to cut-off all discovery" and that the court could address the discovery issue "after the[] Motions for Summary Judgment were ruled upon, [but] to cut-off all discovery now would create an unnecessary appellate issue." In addition to these express admissions, Judge Sheward does not deny or otherwise address Spitz's claim that this particular discussion occurred ex parte after the conference had ended. Judge Sheward's failure to deny or otherwise explain the discussion of these topics constitutes an admission that they were discussed ex parte after the conference had ended. *In re Disqualification of Floyd*, 101 Ohio St.3d 1217, 2003-Ohio-7351, 803 N.E.2d 818, ¶ 6-7 (failure to address the occurrence or the substance of the ex parte communication constitutes an admission).

**{¶ 16}** Moreover, the conclusion that Judge Sheward and Little discussed these same subjects after the conference had ended is bolstered by the responses of staff attorney Koorn and attorney Little. In her response, Koorn states that after the conference had ended, the judge and Little discussed motion practice (including a reference to summary-judgment motions), discovery-related matters, and Judge Sheward's view that the court of appeals "frown[s] upon [trial court] decisions that shorten the discovery period." Similarly, Little admits that after the conference concluded, he and the judge discussed docket-management practices and that Judge Sheward "expressed his views about the appellate court."

**{¶ 17}** In sum, sufficient evidence exists in this case to conclude that Judge Sheward allowed Little to continue to argue issues that were still in controversy outside the presence of opposing counsel. Such conduct constitutes grounds for automatic disqualification. *See Williams*, 74 Ohio St.3d at 1249-

1250, 657 N.E.2d 1352 (ex parte communication that addresses substantive issue warrants disqualification).

{¶ 18} But even if there were no discussion about a substantive matter in the case, Judge Sheward's disqualification would still be required because the ex parte conversation between him and Little creates an appearance of impropriety. *Id.* at 1250 (even without evidence of bias, prejudice, or disqualifying interest, the ex parte communication may create an appearance of impropriety).

{¶ 19} Attorney Little averred that he and the judge had only an "academic" discussion about the appellate court and "how some of the other [common pleas] judges in the courthouse were handling their dockets." But according to the observations of Koorn, who overheard the entire ex parte conversation, their communication went well beyond the discussion that Little described. Koorn states that Little spoke generally to Judge Sheward about his "recent experience in moving for summary judgment in Common Pleas Court" and explained to the judge that "he typically tries to file his motions well in advance of the motion deadline with the hope of avoiding the sort of situation that had prompted the [November 2] conference." According to Koorn, "[r]ather than some extravagant plan to sabotage the case schedule, Mr. Little described what [Koorn] would call a client centered approach that consists of moving for judgment early in an effort to end the litigation sooner and save his clients unnecessary expense."

{¶ 20} The subjects broached by Little, even accepting that he was not talking specifically about the underlying case, have a direct and substantial bearing on matters at issue before Judge Sheward, specifically (1) Little's requests for sanctions, (2) the ongoing discovery disputes, and (3) Little's motions for summary judgment. A reasonable person could justifiably infer that Little's "academic" comments were an attempt to privately influence the judge in his favor as to matters pending before the court. In fact, according to Koorn, Judge

Sheward "acknowledged [Little's] noble attempts," suggesting that the judge may have indeed been swayed.

{¶ 21} Judge Sheward contends, however, that it should be evident by his decision in favor of the plaintiffs that he is impartial. But the test in this instance is not whether Judge Sheward is capable of treating the plaintiffs fairly and impartially, but whether a "reasonable and objective" person who was aware of the ex parte discussion between Judge Sheward and attorney Little "would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis,* 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8 (setting forth the proper test for disqualifying a judge based on an appearance of impropriety). The fact that Judge Sheward and Little discussed topics that were closely related to matters pending before the court has the potential of undermining the impartiality and integrity of the trial court.

{¶ 22} "The law requires not only an impartial judge but also one who appears to the parties and the public to be impartial." *In re Disqualification of Corrigan,* 110 Ohio St.3d 1217, 2005-Ohio-7153, 850 N.E.2d 720, ¶ 11. Therefore, to allay any concerns on that issue, it is ordered that Judge Sheward participate no further in these proceedings. The case is returned to the common pleas court for reassignment to another judge of that court.

―――――――――――――――